**Joan M. STEFFES, Plaintiff–Appellant,**

v.

**STEPAN COMPANY, Defendant–Appellee.**

Nos. 97–2625, 97–3638.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1998.

Decided May 21, 1998.

Heidi L. Widell (argued), Azulay & Azulay, Chicago, IL, for Plaintiff–Appellant.

Dana S. Connell (argued), Littler & Mendelson, Chicago, IL, for Defendant–Appellee.

Dori K. Bernstein (argued), C. Gregory Stewart, Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC, for Amicus Curiae Equal Employment Opportunity Commission.

Before CUDAHY, FLAUM, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Joan Steffes suffers from chronic obstructive pulmonary disease, a condition that restricts her breathing and, among other things, makes it dangerous for her to be exposed to certain chemicals. Despite her condition, Steffes worked in the warehouse of a chemical company, Stepan Company (Stepan), until she was bumped from that position by a senior union member. She and Stepan were unable to agree on a suitable substitute position for her, and ultimately Steffes was terminated.

Steffes filed two separate lawsuits, which we have consolidated on appeal. In the first, before Judge Leinenweber, Steffes alleged that Stepan discriminated against her on the basis of her sex and on the basis of her disability. Judge Leinenweber entered summary judgment for Stepan, and we affirm this decision. Steffes's second suit alleged that Stepan unlawfully retaliated against her by informing Steffes's subsequent employer of her lawsuit and medical restrictions. Judge Holderman dismissed the retaliation complaint for failing to state a claim. We affirm this decision as well, although not on the grounds relied upon by the district court.

## I.

In the case before Judge Leinenweber, Steffes asserted claims of sex discrimination under Title VII and discrimination on the basis of disability under the Americans with Disabilities Act (ADA). Steffes had been working for Stepan as a maintenance warehouseman for fourteen years when she was bumped from that position by a senior union

member in November 1993. Because her disease made it dangerous for her to be exposed to chemicals, a position in the production areas of the plant was not a feasible reassignment. Stepan assigned Steffes temporarily to the lab sampling room, where she filled in for a vacationing employee. When further attempts to find a suitable position for Steffes failed, Stepan placed her on a leave of absence in December 1993 and ultimately terminated her employment in May 1996.

Prior to Steffes's termination, a position opened up in the warehouse. Stepan offered Steffes the job on the condition that her doctor clarify the extent of her work restrictions. Stepan provided Steffes with a list of chemicals to which she might be exposed in the warehouse and asked that her physician, Dr. Glenda Flemister, certify that she could safely work around those chemicals. The company also asked that Steffes have her doctor comment on other potential exposures in the warehouse position, including gas and welding fumes, trips to different areas of the plant, and steam cleaning and repair work on certain equipment. Steffes responded with a letter from her doctor stating that Steffes "can work in the store room where the accompanying list of chemical [sic] are in containers, and there will be no adverse respiratory effects, as these products will not be inhaled." The doctor's letter cleared Steffes to return to her employment in the store room, but it warned that Steffes "has had respiratory problems if she is exposed to chemical spills in which vaporization occurs."

Stepan did not consider this to be an adequate response. As it explained in a subsequent letter to Steffes, "Apparently, Dr. Flemister is of the notion that the store room (maintenance warehouse) is a contained space, separate from the maintenance shop, and the store room (maintenance warehouse) only contains chemicals that are in sealed containers." In fact, the chemicals were not always sealed; the warehouse was adjacent to areas where welding, spray painting, and other activities occurred that carried a risk of exposure; and vaporization spills could occur virtually anywhere in the plant. The company concluded that the doctor's letter did not satisfactorily release Steffes from her medical restrictions and accordingly did not offer Steffes the warehouse position. Steffes did not attempt to get more comprehensive assurances from her physician in response to the company's concerns.

The district court entered summary judgment for Stepan on two alternative grounds. First, the court held that Steffes had failed to show that she was a qualified individual with a disability, see 42 U.S.C. § 12111(8), because she had not demonstrated that her difficulty in breathing was severe enough to qualify as a disability. See 42 U.S.C. § 12102(2) (defining "disability"). Second, the court concluded that Steffes had caused a breakdown of the interactive accommodation process required under the ADA, see 29 C.F.R. § 1630.2(o)(3), by failing to respond adequately to Stepan's conditional offer of a new position in the warehouse.

■ After reviewing the record, we agree with the district court that Steffes was responsible for the breakdown in the interactive process, and we affirm on that basis. Stepan had a difficult time clarifying the nature and extent of Steffes's medical restrictions. Steffes first informed the company about her chronic obstructive pulmonary disease only after she was bumped from her warehouse position. The note provided by her doctor stated that Steffes "has been ordered <u>not</u> to have exposure [to] chemicals," and the company took this restriction seriously. A letter from her doctor the following month elaborated on the nature of Steffes's medical condition and stated that "[s]he has been advised to avoid chemical exposure as well as to continue with bronchodilators and inhalant steroids." Given the blanket nature of these restrictions, the obligation fell to Steffes to update or further clarify the kinds of work she could do and the level of chemical exposure, if any, she could tolerate. See Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1136 (7th Cir.1996) ("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the [interactive] process."). Steffes failed to do this, as evidenced by the incompleteness of her re-

sponse to Stepan's conditional job offer for the warehouse position. The doctor's letter purportedly clearing Steffes to return to work not only failed to address the exposure issues legitimately raised by Stepan, but it also displayed a poor understanding of the physical layout of the plant and the various activities occurring in and around the warehouse. Steffes, who had worked in the warehouse for fourteen years, had it within her power to explain the nature of the job to her doctor and to obtain a more comprehensive release letter. Furthermore, even though Stepan decided not to rehire Steffes because her release was inadequate, the company asked Steffes to provide updates if her condition changed so that the company could continue to consider her for job openings. Steffes did not provide any further information to the company. Because Steffes failed to hold up her end of the interactive process by clarifying the extent of her medical restrictions, Stepan cannot be held liable for failing to provide reasonable accommodations. *See Beck,* 75 F.3d at 1137.

■ Steffes also claimed that Stepan discriminated against her on the basis of sex, in violation of Title VII, *see* 42 U.S.C.2000e–2(a), by accommodating male workers with disabilities but refusing to accommodate her. According to Steffes, three men—John Marshall (who suffered from multiple sclerosis), Robert Kane (who had a back injury), and Richard Bright (who had a bad knee)—were each assigned positions in the lab sample room when their disabilities rendered them unable to continue in their previous positions. Each worked in the lab sample room for several years. In addition, a fourth man, Tommie Jones, suffered from epilepsy and was reassigned as a laborer after he could no longer perform his operator job.

Steffes argues that the company created positions for these men to accommodate their disabilities. Although an employer has no obligation under the ADA to create new positions for workers who become disabled, *see Weiler v. Household Fin. Corp.,* 101 F.3d 519, 526 (7th Cir.1996), Steffes contends that Stepan should have created new positions for women if it chose to do so for men. The evidence, however, does not support Steffes's assertion that Stepan created new positions for these four men. Bright replaced Mar-

shall in the lab sample room when Marshall's balance problems prevented him from continuing there. Marshall retired a few weeks later after a brief stint in the warehouse. Kane moved into the lab sample room to replace a part-time worker who left for reasons undisclosed in the record. Finally, Jones was assigned to a laborer position in 1979, approximately fifteen years before the events surrounding Steffes's lawsuit occurred. Steffes does not point to any evidence that this position was created for him. Furthermore, Steffes never requested that she be considered for a laborer position, and this is unsurprising in light of the evidence that moderate physical activity exacerbated her breathing problems.

Thus, the evidence in the record does not show that any of these men were moved into positions created just for them. In addition, we agree with the district court that Steffes has failed to demonstrate that the men were similarly situated to her. *See Geier v. Medtronic, Inc.,* 99 F.3d 238, 241 (7th Cir.1996) (establishing a prima facie case of sex discrimination requires the plaintiff to show that others, similarly situated but not in the protected class, were treated more favorably). None of the men had a disability that restricted his ability to work around chemicals, and none of the accommodations offered to the men occurred around the time that Steffes was looking for available positions. For these reasons, we affirm the district court's entry of summary judgment for Stepan on Steffes's sex discrimination claim.

### II.

While the action before Judge Leinenweber was pending, Steffes signed on with a temporary employment agency and began working for Dow Chemical (Dow). In the course of responding to an interrogatory from Stepan, Steffes informed the company that she had been placed in a warehouse position at Dow Chemical. Stepan's human resources manager, Charles Worden, called Dow on the advice of Stepan's attorneys to verify that Steffes was in fact employed there. According to the complaint, Worden told Dow about Steffes's discrimination suit and medical restrictions. As a result of Wor-

den's call, Dow told the employment agency to stop sending Steffes to work until her medical restrictions were clarified. Steffes did not work for about two weeks until Dow relented and allowed her to return.

■ Worden's phone call to Dow prompted Steffes's second action against Stepan, which alleges that the call constituted retaliation against her for filing her discrimination claims, in violation of both Title VII, see 42 U.S.C. § 2000e–3(a), and the ADA, see 42 U.S.C. § 12203. The elements of a retaliation claim are identical under both statutes. Steffes must demonstrate that she engaged in statutorily-protected activity, that an adverse employment action occurred, and that there exists a causal link between the protected activity and the adverse employment decision. See Talanda v. KFC Nat'l Management Co., 140 F.3d 1090 (7th Cir., 1998) (ADA); Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 885 (7th Cir.1998) (Title VII). As we explain below, Steffes's claim was appropriately dismissed because she failed to satisfy the second element. Worden's phone call, as alleged in the complaint, does not constitute an adverse employment action.

Judge Holderman dismissed the retaliation claim because he found Worden's actions to be protected by an absolute privilege for attorney communications pertinent to litigation. The district court reasoned that, because Stepan's attorneys directed Worden to make the call, Worden was the agent of the attorneys, just as a private detective or other investigator would be. Moreover, the call was pertinent to the litigation pending on Steffes's ADA claim. Steffes's claim that she was qualified to work at Stepan (with reasonable accommodation) would gain support if she could show that Dow was willing to hire her for a similar position despite her medical condition.

■ Steffes, joined by the Equal Employment Opportunity Commission (EEOC), which appears in the case as amicus curiae, argues that the district court erred by applying the Illinois absolute litigation privilege as a bar to her federal retaliation claim. In essence, the absolute litigation privilege affords immunity to attorneys (and other participants in the judicial process) from tort liability arising out of statements made in connection with litigation. See Imbler v. Pachtman, 424 U.S. 409, 439, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (White, J., concurring) (describing common-law privilege). The privilege as it has developed in Illinois is quite broad. According to the district court,

> Illinois law recognizes an absolute litigation privilege which protects anything said or written in the course of a legal proceeding. The only qualification to this privilege is that the communication pertain to the litigation. This requirement is not applied strictly, and the communication need not be confined to the specific issues involved in the litigation. . . . The rationale for the privilege is to secure for attorneys as officers of the court the utmost freedom in representing clients. The absolute privilege is afforded even when malice is assumed to have motivated the attorney. All doubts are to be resolved in favor of finding that the privilege applies. (Citations omitted.)

In applying this privilege to Steffes's claims, the district court relied exclusively on Illinois cases and federal cases interpreting Illinois law. Steffes and the EEOC take this reliance on state law to mean that the district court applied the state privilege to defeat Steffes's federal retaliation claim. Such a decision would indeed constitute error. A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action. See Kimes v. Stone, 84 F.3d 1121, 1127 (9th Cir.1996) (holding that the California absolute litigation privilege does not immunize attorneys from liability under 42 U.S.C. § 1983); see also Martinez v. California, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (holding that § 1983 preempts a state statute purporting to immunize public employees from liability for parole release decisions); Scheib v. Grant, 22 F.3d 149 (7th Cir.), cert. denied, 513 U.S. 929, 115 S.Ct. 320, 130 L.Ed.2d 280 (1994) (applying the Illinois absolute litigation privilege to a wiretapping claim under state law, but not to a federal claim arising from the same incident).

It is not evident, however, that the district court applied state law in dismissing Steffes's

federal claim. The district court did not explicitly announce that it was applying state law, and it may in fact have been applying a federal privilege whose content is borrowed from state law. We confronted a similar situation in *Baravati v. Josephthal, Lyon & Ross,* 28 F.3d 704 (7th Cir.1994), in which a securities brokerage firm was sued by a former employee for defamation. The firm argued that the absolute litigation privilege immunized it from liability because the allegedly defamatory communication was made to the National Association of Securities Dealers, a quasi-judicial entity. *Id.* at 707. Although the brokerage firm relied on the privilege as defined in Illinois, we understood the firm to be arguing for the recognition of a federal common-law privilege modeled on the privilege already existing in state law: "A standard way in which federal courts make federal common law is by adopting the law of the state whose law would govern in the absence of federal law, subject to the implicit proviso that the adopted state law be consistent with federal policy." *Id.* We noted that looking to state law to provide the content of a federal litigation privilege takes advantage of the states' "richer bodies of common law" and serves to "minimize the number of different legal rules to which people are subject." *Id.*

There are serious problems, however, with recognizing such a federal privilege in this case. First, the common-law litigation privilege, traditionally understood, applies to attorneys, witnesses, judges, and other participants in judicial proceedings. *See Imbler,* 424 U.S. at 439, 96 S.Ct. 984 (White, J., concurring). The district court fit Charles Worden into this rubric by characterizing him as the agent of Stepan's attorneys, who directed him to place the call to Dow Chemical. Worden, however, placed the call in his capacity as Stepan's employee, and his actions are therefore attributable to the company itself. Thus, the phone call was made by the client acting on its attorney's advice. Characterizing the client as the agent of the attorneys handling the client's litigation—merely because the client takes the attorneys' advice—turns the traditional understanding of the attorney-client relationship on its head. *See* RESTATEMENT (SECOND) OF AGENCY § 1(3) cmt. e (1957) (stating that an attorney is an agent of the client).

Second, and more fundamentally, recognition of the litigation privilege sought by the appellees could interfere with the policies underlying the anti-retaliation provisions of Title VII and the ADA. Retaliatory acts come in infinite variety, *see Knox v. Indiana,* 93 F.3d 1327, 1334 (7th Cir.1996); *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996), and even actions taken in the course of litigation could constitute retaliation in appropriate circumstances. For instance, the Tenth Circuit has held that an employer committed unlawful retaliation by bringing forgery charges against a former employee in order to punish the employee for filing a charge of discrimination. *See Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986–88 (10th Cir.1996); *cf. Power Systems, Inc. v. NLRB,* 601 F.2d 936, 940 (7th Cir.1979) (noting that the filing of a malicious prosecution action against an employee who had filed unfair labor practice charges could itself violate federal labor laws). The Third Circuit has suggested, albeit in dicta, that investigation of an employee who files a discrimination complaint, to discover evidence of resume fraud or some other misconduct to justify terminating the employee, could also constitute unlawful retaliation. *See Mardell v. Harleysville Life Ins. Co.,* 31 F.3d 1221, 1238 n. 1 (3d Cir.1994), *vacated on other grounds,* 514 U.S. 1034, 115 S.Ct. 1397, 131 L.Ed.2d 286 (1995), *reinstated in relevant part,* 65 F.3d 1072 (3d Cir.1995). We do not need to endorse these decisions today. The point is that, since some actions taken in the course of litigation could conceivably constitute retaliation, an absolute litigation privilege as defined in Illinois law would be too broad because it would insulate behavior that could otherwise be actionable under Title VII or the ADA.

We hasten to add, however, that it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by these statutes. In *McKenzie v. Illinois Department of Transportation,* 92 F.3d 473, 486 (7th Cir.1996), we rejected a retaliation claim alleging that the employer instructed the plaintiff's co-employees not to give affidavits or other assistance

to help her with her sex discrimination claim. We explained that "[a]n attempt to obstruct the litigation of the underlying discrimination ·complaint, like oppressive discovery requests and the withholding of other evidence, is inseparable from the litigation of the claim. Accordingly, it is a matter to be resolved pursuant to court rules, not by Title VII." *Id.* Similarly, in the context of immunity for prosecutors and other government attorneys, an area which is closely related to the common-law absolute litigation privilege, *see Baravati,* 28 F.3d at 707, we have emphasized that litigation tactics subject to supervision by the court cannot constitute independent grounds of liability:

> [T]he primary reason for granting attorneys absolute immunity is that their unique function as advocates requires that they be able to present their client's case at trial without intimidation or harassment. . . . Conducting discovery under the rules of civil procedure falls within the unique duties of an advocate and such activities are conducted in the adversarial arena where opposing counsel and the trial court can quickly put the brakes on unethical or unlawful behavior.

*Auriemma v. Montgomery,* 860 F.2d 273, 278 (7th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). We do not wish to foreclose the possibility that some actions taken in the course of litigation could constitute retaliation, and so we cannot agree with the district court's decision extending an absolute litigation privilege to this case. *McKenzie* and *Auriemma* suggest, however, that litigation tactics for the most part will not give rise to actionable retaliation, and we do not believe that Steffes's complaint is sufficient to make out such a claim based solely on Worden's phone call to Dow.

The complaint alleges that Worden told Dow about· Steffes's discrimination suit and about its view of her medical restrictions. Steffes claims that informing her current employer that she had filed a discrimination suit in itself constitutes retaliation. *See Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 894 (7th Cir.1996); *Czarnowski v. Desoto,* 518 F.Supp. 1252, 1259 (N.D.Ill.1981). But the complaint also avers that this disclosure arose in the context of the discovery process. According to the complaint, Stepan first learned that Steffes was working for Dow from Steffes's response to an interrogatory that specifically inquired about her current employment status. Worden's call to Dow was a direct and natural consequence of Steffes's response. Although *Veprinsky* held that an employer might commit unlawful retaliation by revealing, without any apparent legitimate justification, that one of its former employees has filed discrimination charges against it, *Veprinsky,* 87 F.3d at 894 (reversing summary judgment and remanding for further proceedings on this issue), the complaint in this case shows that Worden's revelations to Dow were justified by the need to ascertain the nature of Steffes's employment and the restrictions, if any, imposed by Dow on her job duties.

There is language in *Auriemma* noting that judges are better able to supervise litigation tactics that proceed through the vehicle of the federal discovery rules, as opposed to those that proceed informally outside of the judicial process. *See Auriemma,* 860 F.2d at 278 (affording absolute immunity to government attorneys for their "discovery under the rules of civil procedure" but not for their "pretrial investigations that occur outside the rules of discovery"). According to Steffes, Worden should have deposed a Dow Chemical representative under Rule 30 of the Federal Rules of Civil Procedure, which would have afforded Steffes notice and therefore an opportunity to protect her interest in limiting the disclosures made to Dow. The company's decision to forego this avenue arguably could support Steffes's claim that Worden's conduct was retaliatory. Although we believe that proceeding under the federal discovery rules would have been a safer route, we do not believe that the decision to interview Dow informally was unreasonable in light of the limited number of depositions allowed under the rules, *see* Fed. R. Civ. Pro. 30(a)(2)(A), or that it in any way changes the character of the disclosures allegedly made in that conversation. If there had been a deposition, Dow undoubtedly would have learned the same information that the complaint alleges it learned in Worden's phone call: that Steffes had sued Stepan for discrimination, and that Steffes's medical restrictions were an issue in that suit.

Defendants in discrimination suits must have some leeway to investigate possible defenses without undue fear of being subjected to additional liability in retaliation suits. *Cf. McKenzie*, 92 F.3d at 486 (stating that an employer's attempt to interfere with the plaintiff's prosecution of her discrimination case is better addressed through court rules, not through a separate retaliation suit). The prerogative to prepare a defense is not broad enough to warrant recognition of an absolute litigation privilege, which would effectively insulate everything done in preparation for litigation, but neither is it so stingy as to offer no protection to the communication at issue here. Significantly, the complaint does not allege that Worden misrepresented the medical restrictions given by Steffes's doctor or that he disparaged Steffes in any way. Given the limited nature of the disclosures alleged in the complaint and the fact that the disclosures were inevitable even if Stepan had proceeded under the discovery rules, we conclude that Steffes's complaint is insufficient as a matter of law to sustain a claim of retaliation under Title VII or the ADA.

For these reasons, we affirm the decisions below.