**Andrew P. MOORE II, Plaintiff,**

**v.**

**Harvey E. SCHLESINGER, John E. Steele, Timothy J. Corrigan, Reginald Luster, Charles Truncale, Ralph J. Lee, Maxie Broome, Jr., Earl Johnson, Jr., William J. Henderson, and Egan, Lev & Siwica, Defendants.**

**No. 3:01–cv–108–Orl–31KRS.**

United States District Court,
M.D. Florida,
Orlando Division.

June 21, 2001.

Andrew P. Moore, II, pro se.

Ronnie S. Carter, U.S. Atty. Office, Jacksonville, FL, for Harvey Schlesinger, John E. Steele, Timothy J. Corrigan, Reginald Luster, Charles Truncale, Ralph J. Lee, William Henderson.

Maxie Broome, Jr., Jacksonville, FL, pro se.

Tobe M. Lev, Orlando, FL, for Egan, Lev & Siwica.

## ORDER

PRESNELL, District Judge.

This cause comes before the Court on the Motion and Memorandum of Law to Dismiss on Behalf of Defendants Luster, Truncale, and Lee (Doc. No. 30, filed April 16, 2001) and Plaintiff's response thereto (Doc. No. 62, filed April 30, 2001). Upon consideration of the parties' memoranda and all relevant law, the Court concludes that the motion should be granted for the reasons set forth below.

### Background

In the Amended Complaint, Plaintiff names as defendants Reginald Luster, Charles Truncale, and Ralph J. Lee (hereinafter "the Defendants"). The Defendants are all Assistant United States Attorneys in the Middle District of Florida. The Amended Complaint seeks damages and prospective relief from the Defendants based upon their conduct and participation in the defense of federal defendants in prior lawsuits brought by the Plaintiff in the Middle District of Florida. Plaintiff alleges that the Defendants, together with numerous other federal employees and officials, have acted "continuously and in concert with the common goals ... of maintaining control over the Plaintiff's previously filed claims, [the] common goals to delay, distort, sabotage, dismiss, or otherwise to destroy his previously filed claims, ... [the] common goals to prevent, deter, and or hinder Plaintiff and other witnesses from testifying before the Court and jury, and [the] common goals to keep Plaintiff's claims and lawsuits in a perpetual state of abeyance to prevent his cases from ever going to trial...." (Am. Complaint, Doc. No. 2 at ¶ 26).

In the eleven count Amended Complaint, Plaintiff alleges numerous federal statutory and constitutional violations and several state common law claims against the Defendants. Specifically, in Counts 2 through 9, Plaintiff asserts civil violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, (Civil RICO), based upon numerous predicate acts, including wire fraud, extortion, mail fraud, tampering with witnesses, bribery, conspiracy to defraud the United States, obstruction of justice, and conspiracy to engage in racketeering.

In Count 10, the Plaintiff asserts a claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for violation of the Fourteenth Amendment to the United States Constitution. Also in Count 10, Plaintiff asserts claims of false light and invasion of privacy. Finally, in Count 11, Plaintiff asserts claims for conspiracy to interfere with the rights of a citizen and obstruction of justice in violation of 42 U.S.C. § 1985(2) and (3).

The Plaintiff alleges that the "Defendants took such illegal actions against [him] ..., acting in their individual capacity, improperly in their official capacity" and that "their unlawful acts were done while they purported or pretended to act in the performance of official duty...." (Am. Complaint, Doc. No. 2 at ¶ 38). The Defendants now move for dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the Defendants are immune from a suit for money damages under the doc-

trines of absolute and sovereign immunity. Defendants further move for dismissal of Plaintiff's claims for prospective relief on the ground that Plaintiff has failed to demonstrate the absence of an adequate remedy at law as required to obtain injunctive or declaratory relief.

## Absolute Immunity

Absolute immunity is a question of law for the Court to decide. *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1012 (11th Cir.1992). On a motion to dismiss based on absolute immunity, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* Furthermore, the complaints of *pro se* litigants must be liberally construed and are held to less stringent standards than formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

The Supreme Court has extended absolute immunity to various participants in the judicial process, whose duties are deemed vital to the administration of justice, to allow them to act independently and effectively, without fear or harassment. Absolute immunity protection has been extended to judges, *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), legislators, *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), prosecutors, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the President of the United States, *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); and executive officers engaged in adjudicative or quasi-judicial functions, *Butz v. Economou*, 438 U.S. 478, 513–17, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Although the doctrine of absolute immunity has expanded over time, it is still considered of "rare and exceptional character." *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Thus, while absolute immunity may be accorded under limited circumstances, qualified immunity remains the norm for executive officers who seek immunity from personal liability for unconstitutional conduct. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou*, 438 U.S. at 506, 98 S.Ct. 2894.

In *Mitchell v. Forsyth*, 472 U.S. 511, 520–524, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court discussed three factors that courts should evaluate when determining whether to give a government official absolute immunity for a particular function. The court should ask (1) whether a historical or common law basis exists for immunity from suit arising out of performance of the function; (2) whether performance of the function poses obvious risks of harassing or vexatious litigation against the official; and (3) whether alternatives to bringing a damage suit against the official could redress the wrongful conduct. Prosecuting attorneys meet this test, *Imbler v. Pachtman*, 424 U.S. at 409, 96 S.Ct. 984, as do executive officials and agency attorneys who initiate administrative proceedings on behalf of the government, *Butz v. Economou*, 438 U.S. at 512–17, 98 S.Ct. 2894. In granting absolute immunity to these officials, the Supreme Court reasoned that attorneys who initiate criminal prosecutions and agency proceedings are entitled to absolute immunity because otherwise they "might hesitate to bring forward some witnesses or documents" for fear of personal liability. *Id.* at 517, 98 S.Ct. 2894.

The Defendants do not cite to any case, nor has the Court located one, where the Eleventh Circuit has addressed under what circumstances, if any, a government attorney who defends the government in a civil action is entitled to absolute immunity. A review of the case law of other

jurisdictions, however, reveals support for conferring absolute immunity in such a situation. For example, in *Barrett v. United States*, 798 F.2d 565, 569–70, 573 (2d Cir.1986), the Second Circuit held that an assistant attorney general defending a wrongful death action was entitled to absolute immunity from claims that he concealed facts regarding the federal government's involvement in the death because the attorney's activities were closely associated with the judicial process. In concluding that the assistant attorney general was entitled to absolute immunity, the Court reasoned:

> To make the immunity accorded a government attorney in the conduct of litigation on its behalf turn on whether the lawyer acts in the capacity of counsel for "plaintiff" or "defendant" at any given moment in the proceedings would tend to allow form to triumph over substance. Although government defense counsel, not having selected the other party as the target of the litigation, is in a more passive position than a prosecutor or plaintiff's representative, he nevertheless functions in an adversarial arena ..., and since he is charged with a public trust he should not be inhibited in the faithful performance of his duties by the threat of harassing lawsuits against him. His function as a government advocate therefore entitles him to absolute immunity....

*Barrett*, 798 F.2d at 572 (internal citations and quotations omitted).

Although the *Barrett* Court upheld the district court's grant of absolute immunity to the assistant attorney general who acted as counsel for the state of New York throughout the litigation, it declined to extend absolute immunity to the federal attorneys who did not represent the state and whose involvement in the case was simply to minimize the federal government's exposure to liability. *Id.* at 573. According to the court, the federal attor-

neys' activities were too far attenuated from the judicial process to warrant absolute immunity protection since their conduct was not public and "the open conflict of a court battle, which creates the need for protective immunity to enable the government attorney to perform his duty fearlessly, was totally absent." *Id.*

Other circuits confronting the issue have also extended absolute immunity to government lawyers defending civil suits. *See Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir.1991) (concluding that a government attorney defending the IRS was entitled to absolute immunity for his activities during discovery and at trial because those activities were "intimately associated with the judicial phase" of the litigation); *Ellison v. Stephens*, 581 F.2d 584 (6th Cir.1978) (where, in a pre-*Barrett* decision, the Sixth Circuit held that "the imposition of a legal defense, whether valid or not, is unquestionably an integral part of the judicial process and may not form the basis of a civil rights action against the state's attorney who is immune ... for such conduct.") (internal quotations omitted).

Other courts, while not expressly adopting the reasoning of *Barrett*, have indirectly expressed support for the proposition that government defense attorneys are absolutely immune from suits for money damages for acts closely related to the judicial process. *See Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372–73 (10th Cir.1991) (refusing to extend absolute immunity to private lawyers because, unlike government lawyers defending civil actions, a private attorney serves only his client and has no responsibility to vindicate the public interest); *Auriemma v. Montgomery*, 860 F.2d 273 (7th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989) (noting that although government defense attorneys should generally receive absolute immunity for con-

ducting discovery and presenting their client's case at trial, the government defense attorneys in the case before the court were limited to qualified immunity for conducting extra-judicial investigations outside the controls of the judicial process). Still other courts have avoided the issue altogether. *See, e.g., Wheeler v. Gilmore,* 998 F.Supp. 666, 669 n. 6 (E.D.Va. 1998) (declining to reach the issue of absolute immunity where the record was clear that state attorney general defending against inmate's civil rights suit was clearly entitled to qualified immunity).

In the instant case, the Plaintiff alleges, *inter alia,* that the Defendants, in their role as advocates for the Postmaster General of the United States, "repeatedly concealed information and documents, served tardy answers to [Plaintiff's] discovery requests, made hundreds of false, misleading, and evasive answers on interrogatories, admissions, affidavits, and depositions, evaded legal process and engaged in other misconduct and bad faith...." (Am. Complaint, Doc. No. 2 at ¶ 89). Plaintiff further alleges that Defendant Luster engaged in a "wicked scheme" by filing a fraudulent motion to sever Plaintiff's claims and consolidate Plaintiff's lawsuits. (*Id.* at ¶ 127). Additionally, Plaintiff alleges that Defendant Luster extorted over $33,000 from the American taxpayers to pay for a psychiatric examination of Plaintiff, (*id.* at ¶ 156), and that he influenced witnesses to lie (*id.* at ¶ 178). Plaintiff further claims that the Defendants committed mail fraud by placing fraudulent pleadings and reports concerning Plaintiff's underlying lawsuit in the United States mail. (*Id.* at ¶ 167). Also worthy of mention is Plaintiff's allegation that Defendant Luster conspired with a United States District Judge to sabotage Plaintiff's case in exchange for the promise of a federal judgeship. (*Id.* at ¶¶ 196–97).

Plaintiff's allegations are clearly premised upon the Defendants' performance of the advocacy function in defending the Postmaster General in Plaintiff's underlying lawsuits. The advocacy function is not limited to activity which takes place in the courtroom. It also entails obtaining, reviewing, and evaluating evidence, as well as conducting discovery and filing pleadings and motions with the court. *See Imbler v. Pachtman,* 424 U.S. at 431 n. 33, 96 S.Ct. 984; *Auriemma v. Montgomery,* 860 F.2d at 278. These activities took place within the adversarial arena and were subject to the attendant safeguards of the judicial process. *See Mitchell v. Forsyth,* 472 U.S. at 523, 105 S.Ct. 2806 (where the Supreme Court recognized the that "the judicial process is largely self-correcting: procedural rules, appeals, and the possibility of collateral challenges obviate the need for damages actions to prevent unjust results"). Plaintiff could have raised his concerns regarding Defendants' alleged wrongful conduct during the proceedings in which they occurred or with a professional disciplinary body. Therefore, Plaintiff had an available forum to seek redress for Defendants' conduct without resorting to a suit for money damages. Moreover, as Assistant United States Attorneys, the Defendants were charged with defending the public interest in Plaintiff's underlying civil suits and should not now face the threat of liability for their choice of litigation strategies. For these reasons, the Court approves of the decision of the Second Circuit in *Barrett v. United States* and those courts which have extended the cloak of absolute immunity to a government defense attorney's performance of regular advocacy functions in a civil suit.

The Court recognizes that the grant of absolute immunity is limited to only those activities closely related to the attorney's normal duties as an advocate for the gov-

ernment and does not extend to extra-judicial activities. In this case, the need for absolute immunity is abundantly clear and is vitally necessary to enable the Defendants to perform their essential function in the judicial process without fear of harassment or intimidation. Therefore, the Court concludes that the Defendants are absolutely immune from Plaintiff's suit for money damages.

██ In addition to money damages, the Plaintiff also seeks declaratory or injunctive relief against the Defendants.[1] To obtain declaratory or injunctive relief, a plaintiff must demonstrate that there was a violation of the law, that there is a serious risk of continuing irreparable injury if the relief sought is not granted, and the absence of an adequate remedy at law. *Bolin v. Story*, 225 F.3d at 1242. Here, Plaintiff could appeal from adverse rulings in his civil action or seek an extraordinary writ in the Court of Appeals or Supreme Court. Accordingly, because there is an adequate remedy at law, Plaintiff cannot establish his entitlement to declaratory or injunctive relief.

### Conclusion

In his Amended Complaint, Plaintiff alleges numerous violations of federal and state law against the Defendants. Because the acts complained of occurred while the Defendants were engaged in the performance of an advocacy function intimately related to the judicial process, they are entitled to absolute immunity from Plaintiff's claims for money damages. Additionally, Plaintiff is not entitled to injunctive or declaratory relief because there is an adequate remedy at law. It is therefore

**ORDERED** and **ADJUDGED** that the Motion and Memorandum of Law to Dismiss on Behalf of Defendants Luster, Truncale, and Lee (Doc. No. 30) is **GRANTED.**

Counts 2 through 11 of the Amended Complaint are hereby **DISMISSED WITH PREJUDICE** as they pertain to Defendants Luster, Truncale, and Lee.

All other pending motions pertaining to these Defendants are hereby **DENIED AS MOOT.**

**DONE** and **ORDERED.**

---

1. The Eleventh Circuit has never squarely addressed the issue of whether the absolute immunity of government officials extends to immunity from declaratory or injunctive relief.

*See Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir.2000). Because there is an alternate ground for dismissal, this Court will decline to address that issue here.