In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3358

ELIZABETH HOPPE,

*Plaintiff-Appellant*,

*v.*

LEWIS UNIVERSITY,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-03430—**Edmond E. Chang**, *Judge.*

ARGUED MAY 22, 2012—DECIDED AUGUST 31, 2012

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Elizabeth Hoppe is a tenured professor in the Philosophy Department at Lewis University. She lost the privilege of teaching aviation ethics after the new chair of the Aviation Department, William Brogan, deemed her unqualified for the position because she had no formal training in aviation, she had never worked in the industry, and she had not obtained any

degrees or certifications relevant to the field. During the two years before her removal from the aviation ethics course, Hoppe filed a series of charges with the Equal Employment Opportunity Commission, requesting an accommodation for her clinically diagnosed "adjustment disorder" and accusing the university of discrimination and retaliation.

Hoppe sued Lewis University for discrimination and retaliation under the Americans with Disabilities Act, Title VII of the Civil Rights Act, and 42 U.S.C. § 1981. At the close of discovery, the district court awarded summary judgment in favor of the university on all of Hoppe's claims. Hoppe appeals, first arguing that the district court erred by finding that she could not perform her essential job functions and that Lewis University provided her a reasonable accommodation. We agree that there was no evidence of Hoppe's job functions or her inability to perform them, but the undisputed evidence shows that the university offered Hoppe three different accommodations, which she rejected, and no rational trier of fact could find that the university's efforts were unreasonable. Hoppe also argues that the district court overlooked material fact disputes relevant to her retaliation claims. We disagree. Hoppe has no evidence of a causal link between her protected activity and Brogan's decision, so she has failed to make a prima facie showing of retaliation. Summary judgment in the university's favor, therefore, was appropriate and so we affirm.

## I. BACKGROUND

As this is an appeal from an award of summary judgment, we must construe the facts in the light most favorable to Elizabeth Hoppe, the non-movant below. *See Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). We do so in the narrative that follows.

In 1999, Lewis University hired Elizabeth Hoppe as an assistant professor in the Philosophy Department, situated within the College of Arts and Sciences. About six years later, in 2005, Hoppe received a promotion to associate professor with tenure. Hoppe served as the chair of the Philosophy Department between August 2004 and August 2006.

Hoppe's rise up the ranks resulted in part from her skills as an excellent teacher of philosophy. But she also branched out to teach courses in other faculties, identifying aviation ethics as her sub-specialization. In the fall of 2003, Hoppe began teaching part-time in the Aviation Department while concurrently maintaining a full-time load in the Philosophy Department. At the time, Hoppe had no formal training in aviation, no relevant work experience, and no degrees or certifications associated with the industry. Hoppe taught at least one aviation ethics course each academic year until February 2009, when William Brogan, the newly appointed chair of the Aviation Department, stripped her of those duties. Brogan's decision and the events preceding it are the focal point of this litigation.

Hoppe took a sabbatical in August 2006, based in part on the recommendation of the dean of the College

of Arts and Sciences, Dr. Angela Durante. The dean told Hoppe to "step away from the University environment" and requested that she vacate her office because the Education Department, which had loaned out the space, needed it back for accreditation. A few months later, in January 2007, Hoppe filed an associational discrimination charge with the Equal Employment Opportunity Commission on behalf of a Hispanic colleague whom she believed had suffered racial discrimination. After returning from sabbatical, Hoppe received an office assignment in the Philosophy Department's academic building. But Hoppe refused to use the assigned space. Instead, she removed her name from the door and modified her course syllabi to alert her students that office hours and appointments would occur elsewhere. Hoppe has not actually used an office at the university since the spring semester of 2007.

On July 27, 2007, Hoppe filed a second charge of discrimination with the EEOC, this time alleging retaliation. Hoppe claimed that she had been "subjected to worsened terms and conditions of employment, including unwarranted disciplinary action, failure to inform her of a security concern when other faculty members were informed, and altered job responsibilities." As one example, Hoppe cited the fact that the dean no longer recognized her as the "go to" person for participation in university committees and affairs. Before filing her first charge of discrimination, Hoppe had served on at least one faculty search committee every year, but in the succeeding four years, she served on only one such committee. Faculty search committee members were not paid for their service.

Hoppe claimed to have also experienced other retaliation, including: (1) not being selected to participate in the final program review of the Philosophy Department, (2) not receiving a particular research grant for which she had applied, (3) being reported to the dean for missing meetings and required to supply a doctor's note, (4) being out of communication with Dean Durante, and (5) being identified as one of a dozen people who "might have a problem or issue or be angry" and who might be responsible for two harassing letters that the Dean Durante received and reported to police.

In August 2007, Dr. Kathleen Zachary diagnosed Hoppe with "adjustment disorder with anxiety and depressed moods." Because of her disorder, Hoppe at times avoided the internet and enlisted the assistance of her friends, her therapist, or her attorney to read and summarize electronic messages. Hoppe once went a full month without personally checking her voice mail or opening her postal mail. Hoppe's adjustment disorder was allegedly exacerbated by certain individuals at Lewis University. One such person was Professor George Miller, the chair of the Philosophy Department. Hoppe had an office in the same academic building as Professor Miller—they were the department's only permanent faculty members—but being near or interacting with him allegedly heightened Hoppe's anxiety.

On August 27, 2008, Hoppe's doctor sent a letter to Lewis University requesting that Hoppe's office be relocated to accommodate her disorder. The letter did not

identify a campus location that would be suitable for Hoppe, so Lewis sent a letter back asking the doctor to clarify the accommodation request and delineate the factors likely to aggravate Hoppe's condition. Hoppe brought the university's letter to her doctor and, on September 30, 2008, Hoppe's doctor forwarded the university a second accommodation request. The second letter again failed to specify a suitable location or the particular stressors that Hoppe needed to avoid. Nevertheless, the university offered Hoppe three office options, each located in the same building as her temporary assignment. Hoppe rejected all three.

In October 2008, Hoppe chaperoned students from the aviation department on a field trip to Federal Express. Brogan later received complaints about Hoppe's behavior during the trip. Hoppe had experienced vertigo and she took prescription medication to treat her symptoms. During a dinner later that evening, Hoppe drank two glasses of wine, even though her doctor had recommended that she avoid alcohol after taking her medication, and behaved in a manner that struck the FedEx representatives as unprofessional.

About one month later, Brogan met with Hoppe to discuss the complaints he received and to notify her that she would no longer teach aviation ethics. Brogan told Hoppe that she was not qualified to teach the course. He said nothing about the FedEx trip, however. Rather, Brogan maintained that his decision had nothing to do with Hoppe's professionalism and she could continue to accompany the department on trips in the future.

Brogan and Hoppe met a second time on February 26, 2009, shortly after Hoppe's attorney notified Lewis University that it had failed to accommodate Hoppe's disability. During this second meeting, Brogan told Hoppe that she had been permanently barred from teaching courses offered by the Aviation Department. He cited her lack of qualifications and her "behavior" during the FedEx trip as reasons for his decision. About two months later, Hoppe filed a third charge of discrimination with the EEOC, alleging disability discrimination and retaliation.

On January 19, 2010, Lewis University received a third letter from Hoppe's doctor requesting an accommodation. The letter asked that Hoppe be moved to a different "location." Despite the university's express requests, Hoppe's doctor again did not identify a suitable office or who or what was contributing to Hoppe's difficulties. Three days later, Lewis offered Hoppe an office in a different building. Hoppe accepted the new office space, but never moved in.

Hoppe sued Lewis University for discrimination, retaliation, and failure to accommodate a disability. She asserted six claims: (1) associational discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; (2) retaliation under Title VII; (3) associational discrimination in violation of 42 U.S.C. § 1981; (4) retaliation under section 1981; (5) discrimination and failure to accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and (6) retaliation under the ADA. At the close of discovery, the district court granted summary judgment in favor

of the university on all six claims. The court held that Hoppe could not perform her essential job functions, that the university made a good faith effort to reasonably accommodate her, and that Hoppe failed to identify evidence of a casual connection between her protected activity and her removal from the aviation ethics course. Hoppe's appeal seeks to revive all but her associational discrimination claims.

## II.  ANALYSIS

We review an award of summary judgment *de novo*. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Summary judgment is appropriate only if "there are no genuine issues of material fact and judgment as a matter of law is warranted for the moving party." *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011). Our review consists of "examin[ing] the record in the light most favorable to [the party], against whom summary judgment was granted, resolving all evidentiary conflicts in [her] favor and according [her] the benefit of all reasonable inferences that may be drawn from the record." *O'Leary*, 657 F. 3d at 630 (citations omitted). We will affirm only if "no reasonable trier of fact" could find in favor of the non-moving party. *Id.*

### A.  Hoppe's ADA Discrimination Claim

To establish disability discrimination, a plaintiff must prove that (1) she is disabled within the meaning of the

ADA, (2) she is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and (3) she suffered from an adverse employment action because of her disability. *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). "If an ADA plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for the employment decision. If the employer succeeds, then the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual." *Id.* (citation omitted).

The district court found no genuine dispute regarding Hoppe's inability to perform the essential functions of her job and the university's reasonable effort to accommodate her disability. Hoppe argues that the record does not support the district court's finding that she could not perform her essential job functions. She also contends that by finding that Lewis University provided her a reasonable accommodation, the district court resolved a material fact dispute and did not view the evidence in the light most favorable to her. We agree with her on the first point, but not on the second.

The ADA requires an employer to make reasonable accommodations to allow a "qualified individual with a disability" to perform the essential functions of her job. 42 U.S.C. § 12112(b)(5)(A). Federal regulations instruct courts to consider the following categories of evidence when deciding an employee's essential job functions:

> (i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

The record contains no evidence of Hoppe's essential job functions. The district court, therefore, had no evidentiary basis for concluding that "[c]ommunication with students, committees, fellow professors, and administrators are a necessity for a teaching position, where the object of the profession is to communicate and pass on knowledge." But even if we accept the court's conclusion, Hoppe has identified record evidence to support her insistence that she can in fact perform the identified functions. First and foremost, the university's answer to Hoppe's complaint admits that Hoppe can perform her essential job functions. That admission likely should have ended the court's inquiry.[1] Addi-

---

[1] Indeed, this fact was undisputed until Hoppe's deposition testimony supposedly surprised the university with details of

(continued...)

tionally, there is no dispute that Hoppe has been and remains employed with Lewis University. Hoppe's past and present employment are probative of her abilities as well. *See Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 197 (7th Cir. 2011) (finding plaintiff could perform essential job function because, among other things, plaintiff "was asking only that he be allowed to work as he had worked successfully for several years."). The university adduced nothing to contradict Hoppe's claim that she can perform her essential job functions, and even if it had done so that evidence would have created a material fact dispute, so the district court should not have granted summary judgment on that basis. But the district court was correct that no rational trier of fact could find that Lewis University failed to offer Hoppe a reasonable accommodation.

An employer satisfies its duty to reasonably accommodate an employee with a disability when the employer does what is necessary to allow the employee

---

[1] (...continued)

her disability. The sticking point for the university is Hoppe's admission that her adjustment disorder prevented her from checking her voicemail and sending postal mail for a month on one prior occasion and that in the past she checked her email once per week. But this evidence does not prove that Hoppe's disorder prevents her from ever doing these things, or doing them without a reasonable accommodation. In fact, Hoppe testified that she often enlisted the assistance of others to check and relay her messages when her disorder prevented her from personally doing so.

to work in reasonable comfort. *Vande Zande v. State of Wisc. Dep't of Admin.*, 44 F. 3d 538, 546 (7th Cir. 1995). An employer need only provide a qualified individual with a "reasonable accommodation, not the accommodation [the employee] would prefer." *Rehling v. City of Chi.*, 207 F.3d 1009, 1014 (7th Cir. 2000). "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process." *Id.* (quoting 29 C.F.R. § 1630.2(o)(3)). An employer can take no solace in its failure to engage in this process in good faith if what results is an unreasonable or inappropriate accommodation offer. *See id.* at 1016. And an employee who fails to uphold her end of the bargain—for example, by not "clarifying the extent of her medical restrictions"—cannot impose liability on the employer for its failure to provide a reasonable accommodation. *Steffes v. Stepan Co.*, 144 F.3d 1070, 1073 (7th Cir. 1998). The undisputed evidence in the record shows that Hoppe did not provide the university with the information it needed and requested and the university took reasonable steps even without this information to accommodate Hoppe's disability. The university therefore is entitled to judgment as a matter of law.

In *Steffes*, faced with a similar fact pattern, we held that an employer is entitled to judgment as a matter of law if an employee refuses to cooperate in good faith during the interactive process. *Id.* at 1073. The disabled employee in that case, Joan Steffes, suffered from chronic obstructive pulmonary disease, which made it dangerous for her to be exposed to certain chemicals.

Steffes worked in the warehouse of a chemical company, Stepan. The employer had offered Steffes a job in the warehouse on the condition that her doctor clarify the extent of her work restrictions and certify that Steffes could safely work around certain, identified chemicals. Steffes's doctor informed Stepan that Steffes could work in "the store room where the accompanying list of chemical[s] are in containers" but "[she] has had respiratory problems if she is exposed to chemical spills in which vaporization occurs." *Id.* at 1072. Stepan found the letter deficient because it did not reflect the actual conditions in the warehouse, and "Steffes did not attempt to get more comprehensive assurances from her physician in response to the company's concerns." *Id.* We affirmed summary judgment because Stepan could not be held liable for failing to provide a reasonable accommodation on account of Steffes causing a breakdown in the interactive process. *Id.* at 1072-73.

Hoppe argues that summary judgment should not have been granted in this case because, like in *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 793 (7th Cir. 2005), the employer caused the interactive process to break down and, as a result, her disability was not reasonably accommodated. But *Sears* is a very different case. The employer there knew of the employee's nerve damage in her right leg and her doctor's recommendation that she be given a parking spot closer to the building, access to the apparel stockroom to eat lunch, and access to the shoe stockroom as a shortcut to her workstation. Even so, the employer did not make its facility "readily accessible to and useable by" the employee in ac-

cordance with her doctor's recommendation, but instead it "either rescinded" the accommodations it had previously made or "reprimand[ed] [the employee] when she tried to use them." *Id.* at 803. That did not happen here.

The letter from Hoppe's doctor, like the plaintiff's letter in *Steffes*, lacked specific details about what steps were necessary to reasonably accommodate Hoppe's disability. Although Hoppe allegedly told Ayers that she did not want an office in the same building as Professor Miller, there is no evidence that Ayers or the university's human resources department—the recipient of Hoppe's past doctor's letters—knew that the recommendation had come from Hoppe's doctor. And there is no dispute that the university sent Hoppe's doctor at least two letters requesting specific information to no avail. Unlike in *Sears*, Hoppe's doctor never provided an adequate response to the university's request, but the university still offered Hoppe three different office locations. Consequently, no rational trier of fact could find that the university failed to participate in good faith in the ADA-required interactive process or that it failed to offer Hoppe a reasonable accommodation. Summary judgment was therefore appropriate on Hoppe's ADA claim.

## B. Hoppe's Retaliation Claims

Hoppe's remaining claims relate to the university's allegedly retaliatory conduct. The district court granted summary judgment in favor of the university on these

claims because, among other things, the record lacked evidence tending to show a causal link between Hoppe's protected activity and her removal from the aviation ethics course. Hoppe argues that the court overlooked the temporal proximity between the two, ignored her evidence that both Brogan and Ayers knew about her protected activity, and failed to accept her evidence that the university's articulated justifications were pretextual.

Title VII forbids retaliation against anyone who "'has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 314 (7th Cir. 2011) (quoting 42 U.S.C. § 2000e-3(a)). Section 1981 and the ADA also prohibit retaliation. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (Section 1981); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001) (ADA).

A plaintiff may establish retaliation under the direct or indirect method of proof. *See Weber v. Universities Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). Hoppe neither alleged nor provided evidence of any similarly situated employees not subjected to the same adverse action, so she may only proceed under the direct method of proof. *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 740 (7th Cir. 2011). "To avoid summary judgment on a retaliation claim under the direct method, [the plaintiff] must produce evidence from which a

jury could conclude: (1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two." *Bernuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 664 (7th Cir. 2011) (citation an internal quotation marks omitted).

There is no dispute that Hoppe engaged in statutorily protected activity by filing her charges of discrimination and requesting a reasonable accommodation for her disability. With the exception of her removal from the aviation ethics course, the retaliatory conduct that Hoppe complains about objectively does not rise to the level of being materially adverse. *See Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Hoppe offers no authority for classifying the complained-about conduct as anything other than mere snubs or slights. And there is no evidence to suggest that the adverse actions in question produced or were likely to produce an injury or harm, economic or otherwise. Hoppe argues that losing a share of one's teaching re-sponsibility might "dissuade[] a reasonable [professor] from making or supporting a charge of discrimination." *See id.* Because the university has not contested this point, forfeiting any argument it might have on the issue, we will assume that Hoppe's removal from the aviation ethics course constitutes an adverse action. *See Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995). But it is the third, rather than the first or second, element under the direct method of proof that presents the biggest obstacle to Hoppe's claim: there is no evidence of a

causal link between Hoppe's protected activity and her removal from the aviation ethics course.

Hoppe first argues that the "temporal proximity" between her protected activity and the materially adverse action is sufficient to avoid summary judgment. While that is normally true, *see Burnell v. Gates Rubber Co.*, 647 F.3d 704, 710 (7th Cir. 2011), Hoppe first engaged in protected activity two-and-a-half years before she was removed from the aviation ethics course. *See Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001) (explaining temporal proximity requires that "an adverse employment action follows close on the heels of protected expression"). More importantly, Hoppe has failed to identify any evidence that Brogan, the person who removed her from the position, knew of her protected activity or that her protected activity was "a substantial motivating factor" in Brogan's decision. *See Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011). Without such evidence, Hoppe's temporal proximity argument fails. *See Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 705 (7th Cir. 2012) ("There is no indication that [the plaintiff's] EEOC charge was a factor, much less a substantial motivating factor, for [the defendant] to require her to take a leave of absence.").

Hoppe next argues that Dean Ayers, not Brogran, was the final decisionmaker responsible for removing her from the aviation ethics course. There is no dispute that Ayers knew about Hoppe's EEOC charges and her request for an ADA accommodation. But Hoppe's evidence—which includes the university's bylaws and

testimony from the Provost, Dean Durante, and Professor Miller suggesting that the dean approves the schedule of classes and has supervisory authority over depart-ment chairs—does not establish Dean Ayers as the ultimate decisionmaker.[2] Sure the dean "approve[d]" the schedule of classes, but it does not follow that she had veto power over the courses taught and the professors who taught them. Hoppe has no evidence to prove that to be the case.

Hoppe's final argument is about pretext. She insists that a reasonable jury might disbelieve Brogan's stated rationale for removing her from the aviation ethics course. For support, Hoppe points to her past ex-periences teaching the course, her positive performance evaluations in teaching philosophy, and the fact that Brogan removed her from the aviation ethics course shortly after he spoke to Dean Ayers. These are all legiti-mate bases for finding pretext. *See Sylvester v. SOS Chil-dren's Villages Illinois, Inc.*, 453 F.3d 900, 904 (7th Cir. 2006) (describing women employees who received positive

---

[2] Hoppe has not advanced a cat's paw theory of liability. *See Hicks v. Forest Preserve Dist. of Cook Cnty.*, 677 F.3d 781, 790 (7th Cir. 2012) ("'[I]f a supervisor performs an act motivated by [a discriminatory or retaliatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable'" (quoting *Staub v. Proctor Hosp.*, ___ U.S. ___, 131 S. Ct. 1186, 1194 (2011)). Even if she had, there is no evidence that Ayers persuaded Brogan to remove Hoppe from the aviation ethics course. *See id.*

evaluations before sexual harassment charges but were fired for poor performance afterward); *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003) ("One can reasonably infer pretext from an employer's shifting or inconsistent explanations."); *Miller*, 643 F.3d 190, 200 (7th Cir. 2011) (remanding retaliation claim for trial because the plaintiff "presented sufficient evidence from which a finder of fact could genuinely call into question [the defendant's] honesty."). But Hoppe faces antecedent problems.

First, Hoppe identifies no evidentiary basis for inferring a causal connection between her protected activity and her removal from the aviation ethics course. Hoppe was given permission to teach the course from the department chair, not Brogan. There is no evidence that Brogan knew about Hoppe's protected activity. And Hoppe was only removed from the course after Brogan became chair of the Aviation Department, two-and-a-half years after Hoppe filed her first discrimination charge with the EEOC. Second, the university never attempted to justify her removal from the aviation ethics course on the grounds of poor performance, so her past positive evaluations in teaching (philosophy) are inapposite. *See Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) ("Although, in some circumstances, previous employment history may be relevant and probative in assessing performance at the time of termination, its limited utility must also be recognized."). Finally, Hoppe offers no evidence to contradict Brogan's claim that she was unqualified to teach the aviation ethics course when she lost the position. At

the time, Hoppe had never worked in the aviation in-dustry, she had no formal training in aviation, and she held no degrees or certifications relevant to the field. While it is true that Brogan initially told Hoppe that he was removing her because she lacked the necessary qualifications to teach the course and later added her unprofessional demeanor during the FedEx trip as a secondary justification, this evidence comes to bear on the pretext inquiry only after the plaintiff makes a prima facie showing of retaliation. *See Lalvani*, 269 F.3d at 790 ("When an adverse employment action follows close on the heels of protected expression, and the plaintiff can show that the person who decided to impose the adverse action knew of the protected conduct, the causation element of the prima facie case is typically satisfied."). Hoppe has failed to make that showing here.

## III. CONCLUSION

For the above-stated reasons, the district court's grant of summary judgment in favor of the university is AFFIRMED.