NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 5, 2012[*]
Decided December 5, 2012

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-1509

| | |
|---|---|
| DEREK S. KRAMER, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 10-cv-224-slc |
| WILLIAM POLLARD, et al., *Defendants-Appellees.* | Barbara B. Crabb, *Judge*, and Stephen L. Crocker, *Magistrate Judge*. |

**O R D E R**

Derek Kramer, a Wisconsin prisoner, complains that prison officials and the Wisconsin Department of Corrections have unconstitutionally inhibited his practice of Odinism, a polytheistic religion. Specifically, he contends that they violated his free exercise and equal protection rights by preventing Odinists from worshiping as a group and using religious items during group worship. He also argues that the officials

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

unconstitutionally denied him a religious feast with pork. Kramer appeals from the district court's entry of summary judgment on his claim for damages for having been denied group worship and the accompanying religious items. He also appeals the dismissals at screening of his religious-diet claim and request for an injunction. We affirm the district court's grant of summary judgment on Kramer's damages claims because prison officials did not violate any of Kramer's clearly established rights and were therefore protected by qualified immunity. In addition, his injunction claims do not present an ongoing case or controversy and were therefore properly dismissed. But we conclude that Kramer's religious-diet claim was dismissed prematurely. We therefore affirm in part and vacate in part the district court's judgment.

We recount the facts in the light most favorable to Kramer. *See Hoppe v. Lewis University*, 692 F.3d 833, 838 (7th Cir. 2012). Kramer is currently incarcerated at the Wisconsin Secure Program Facility in Boscobel (Boscobel). But for parts of 2007 and 2008, where the principal events of this case occurred, he was housed at the Green Bay Correctional Institution (Green Bay). He is an adherent of Odinism. (The religion is known by several names, but for simplicity we will refer only to Odinism). Odinism is a polytheistic religion, which was practiced for millennia in northern Europe before the rise of Christianity and has been revived in recent decades. The practice of Odinism includes group worship ceremonies. Pork is a sacred food to Odinists.

Wisconsin's Department of Corrections recognizes that many of its inmates subscribe to Odinism, among other faiths. To provide religious services to prisoners across all faiths, the Department divides religions into seven "umbrella" groups—Protestant, Catholic, Jewish, Islam, Native American, Eastern Religions, and Pagan. The Department classifies Odinism as part of the "Pagan" umbrella group, which includes other "earth-based" religions such as Wicca. Kramer prefers to practice Odinism in a group-worship setting outside of the Pagan umbrella and Pagan leadership. Department policy bans inmates from leading religious services to avoid giving any prisoner authority over other inmates and thereby threatening security. Green Bay had no qualified, non-inmate volunteers to lead Odinist services and thus offered no exclusively Odinist group-worship opportunities.

In March 2008, a conflict developed at Green Bay's Pagan group meeting. Several Odinist inmates, including Kramer, refused to participate in the Wiccan ritual conducted at the beginning of the service because they were not Wiccans themselves. They requested simply to observe the ritual and then join the discussion portion of the session. Prison officials told Kramer that he had to participate in the ritual or leave the chapel, and he decided to leave. Dissatisfied with what he felt were insufficient opportunities to practice Odinism at Green Bay, Kramer later petitioned prison officials to alter their policies

concerning Odinism in several ways, three of which are relevant to this appeal: Kramer requested that Green Bay allow (1) group worship for Odinists, separate from other Pagan inmates, led if necessary by inmates; (2) Odinist religious items at ceremonies for group worship; and (3) a yearly feast at which ham or pork would be served. Green Bay officials recommended denying Kramer's requests, citing the Department's "umbrella group" policy, its prohibition on inmate-led religious services, and the unavailability of non-inmate, Odinist religious leaders. (They did not specifically respond to Kramer's request for a feast). William Pollard, Green Bay's warden, accepted the recommendation and denied Kramer's requests. Kramer appealed through the Department's administrative process, to no avail.

Kramer then sued in federal district court, alleging that prison officials denied him the opportunity to practice his religion in violation of the Free Exercise Clause, the Establishment Clause, and the Equal Protection Clause of the Constitution. He sought damages, *see* 42 U.S.C. § 1983, and injunctive and declaratory relief under Religious Land Use and Institutionalized Persons Act, *see* 42 U.S.C. § 2000cc-1. He contends that Green Bay prevented him from worshiping in an Odinist group, that Green Bay should have allowed into the prison chapel several items necessary for Odinist group worship, and that the Department denied him a religious feast.

The district court screened Kramer's complaint, *see* 28 U.S.C. § 1915A, and dismissed Kramer's RLUIPA and religious-diet claims. (A district judge issued the screening orders, but later orders were issued by a magistrate judge with the parties' consent. For simplicity, we will refer to both the district judge and the magistrate as the "district court.") The court concluded that Kramer's RLUIPA claim, which sought an injunction for group worship and prayer items at Green Bay, was moot in light of Kramer's transfer from Green Bay. The court added that the claim was unripe against his current prison at Boscobel because Kramer had never requested group worship or prayer items there. Finally, the court thought that Kramer had not exhausted administrative remedies for his religious-diet claim and accordingly dismissed it.

The district court allowed Kramer's damages claims against Green Bay for denying group worship and religious items to proceed and granted summary judgment for the defendants. (It also permitted Kramer to proceed on another claim: that Green Bay wrongly denied him a Thor's Hammer amulet while Kramer was housed in segregation. The court ruled for Kramer on this claim and awarded him one dollar in nominal damages.) In ruling that Green Bay's denial of group worship and the accompanying religious items did not violate Kramer's free exercise or equal protection rights, the court applied the standard set forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). It reasoned that any restriction on Kramer's ability to practice Odinism in a group was reasonably related to the prison's

legitimate policy against allowing inmates to lead religious services. Since no qualified non-prisoner volunteers were available to lead an Odinist worship service, the prison could prohibit Odinist group worship. The court also concluded that the defendants were protected by qualified immunity. Finally, the court granted summary judgment on Kramer's claims seeking religious items for Odinist group worship, concluding that Kramer could not succeed on these claims since the underlying denial of group worship was constitutional.

Kramer contends that the district court erroneously granted summary judgment to defendants on his claim for damages under the free exercise and equal protection clauses, insisting that he was entitled to engage in group Odinist worship at Green Bay. He identifies several options that he believes would have accommodated his need for group worship: Green Bay could have sought an outside volunteer, trained a staff member, or permitted inmates to lead a service under the supervision of prison staff, which he asserts Green Bay has sometimes allowed. In Kramer's view, Green Bay officials violated the constitution because they barred Odinist group worship without exhausting these available alternatives. We review the district court's grant of summary judgment *de novo*. *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012).

Kramer's group-worship claims under § 1983 cannot succeed if the defendants, who are government officials, are protected by qualified immunity. Kramer's pro-se brief devotes only a short paragraph to contesting the district court's conclusion that qualified immunity protects the defendants. The defendants respond with a similarly bare-bones response, contending only that Kramer's perfunctory argument on point waives the issue. We construe pro se filings liberally, *see Calhoun v. DeTella*, 319 F.3d 936, 943 (7th Cir. 2003), and in the interest of justice we will consider whether the district court properly granted defendants qualified immunity.

Qualified immunity protects government officials from facing suits for damages when their actions do not violate clearly established constitutional or statutory rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's action violated a clearly established right. *See Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010). To be clearly established, a right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotations and brackets omitted). This is a high bar. To defeat a qualified-immunity defense, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083

(2011). Courts may decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Kramer cannot meet his burden of showing that it is "beyond debate," *al-Kidd*, 131 S. Ct. at 2083, that the defendants violated his rights by denying him the opportunity for group worship. Kramer can recover damages for a free exercise or equal protection violation only if the defendants' actions are not reasonably related to a legitimate penological interest under the test established in *Turner v. Safley*, 482 U.S. 78 (1987). *See, e.g., Maddox v. Love*, 655 F.3d 709, 719 (7th Cir. 2011); *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). *Turner* sets forth four factors that a court must consider in a case like Kramer's: "(1) whether the restriction is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative means of exercising the right that remain open to the inmate; (3) what impact an accommodation of the asserted right will have on guards and other inmates; and (4) whether there are obvious alternatives to the restriction that show that it is an exaggerated response to penological concerns." *Ortiz*, 561 F.3d at 669 (internal quotation marks and brackets omitted).

The record does not support a conclusion under *Turner* that the defendants' actions violated Kramer's clearly established rights. Given the undisputed absence of non-inmate volunteers to lead Odinist services at Green Bay, factor (1) heavily favors the defendants. The prison has a legitimate security interest in preventing prisoners from assuming any leadership authority over fellow inmates. *See Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988) (a prison need not "allow inmates to conduct their own religious services, a practice that might not only foment conspiracies but also create (though more likely merely recognize) a leadership hierarchy among the prisoners"); *Hadi v. Horn*, 830 F.2d 779, 784–85 (7th Cir. 1987). This interest supports their restriction on inmate-led religious services. For factors (3) and (4), Kramer focuses his attention on his proposal to have Green Bay recruit an outside leader, train staff leaders, or supervise inmate leaders. But Kramer has not substantiated that outside volunteers exist; that if they do they can be easily recruited; or that spare staff and prison resources are available on demand for training or supervising inmate leaders. Although he contends that in the past prison staff were available to supervise inmate-led services, he cannot attest that the staff's past availability extended to the time when he sought services. It is therefore impossible to determine whether the prison could have readily implemented the alternatives he identifies or what impact they might have had on prison administration. This indeterminacy prevents factors (3) and (4) from favoring Kramer. Only factor (2) tilts toward Kramer because he asserts without contradiction that he had no real opportunity to engage in exclusively Odinist group worship at Green Bay; for group services, he had to participate in the worship of other

Pagan religions to which he does not subscribe. But on this record Kramer cannot establish the violation of a clearly established constitutional right when only one of the four relevant factors clearly favors him.

Moreover, a number of courts have rejected arguments similar to Kramer's, providing further support for the defendants' position that they did not violate Kramer's clearly established rights. In several cases, courts have upheld the decision of prison administrators to deny group worship based on rationales substantially similar to Green Bay's explanation that inmate-led services present a security risk and non-inmate leaders were unavailable. *See, e.g.*, *Hadi v. Horn*, 830 F.2d 779, 781, 784–85 (7th Cir. 1987) (finding no First Amendment violation under *Turner* when prison cancelled Muslim services due to the unavailability of a Muslim chaplain); *Baranowski v. Hart*, 486 F.3d 112, 120–22 (5th Cir. 2007) (affirming summary judgment in favor of prison on Jewish prisoner's free-exercise claim where prisoner sought inmate-led services in the absence of a rabbi or approved volunteer); *Spies v. Voinovich*, 173 F.3d 398, 402, 405–06 (6th Cir. 1999) (affirming summary judgment in favor of prison on Zen Buddhist prisoner's free-exercise claim and approving prison's prohibition on inmate-led services). This is not to say that the constitutional issue is settled if a prison has the resources either to find or train non-inmate leaders or adequately supervise inmate-led group prayer but declines to use them. Given the precedents, however, permitting prison administrators to deny group worship where no volunteer or chaplain is readily available to lead services, a reasonable government official would not have known the official was violating clearly established law by refusing Kramer's requests for Odinist group worship.

Having concluded that qualified immunity bars Kramer from recovering damages on his group-worship claims, we need not separately evaluate his claims regarding Green Bay's denial of Odinist group-practice items. We agree with the district court that our ruling that Kramer cannot recover for the denial of group worship compels the conclusion that he cannot recover damages from Green Bay for withholding items that he seeks only for the purposes of group worship. Therefore we affirm the district court's grant of summary judgment on Kramer's claims regarding group-worship items.

We also affirm the district court's dismissal at screening of Kramer's claim under RLUIPA to enjoin Department officials from barring Odinist group worship and religious items throughout the state. We review a dismissal at screening in a prisoner case *de novo*, and take the well-pleaded facts alleged in the prisoner's complaint as true. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).  Under Article III of the Constitution, courts have jurisdiction to decide only live controversies between the parties. *Honig v. Doe*, 484 U.S. 305, 317 (1988). Kramer sued the state defendants while he was incarcerated at Boscobel, after

he had been transferred from Green Bay. But Kramer has not pleaded in his complaint that he asked any defendants for the opportunity to practice Odinism in a group or use religious items *at Boscobel*, or that he even sought to engage in Odinist group worship or use religious items there. Without an ongoing controversy about these denials at Boscobel, Kramer has no justiciable claim for an injunction merely because a different prison previously denied him that opportunity. *See O'Shea v. Littleton*, 414 U.S. 488, 493–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

We agree, however, with Kramer's contention that the district court erroneously dismissed his religious-diet claim on the ground that he failed to exhaust his administrative remedies. Although exhaustion "is an affirmative defense with the burden of proof on the defendants," *Maddox*, 655 F.3d at 720, the district court may, if obvious from the complaint, dismiss a prisoner complaint *sua sponte* for failure to exhaust. *See Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). But here, the documents Kramer attached to his complaint suggested that he *did* exhaust administrative remedies pertaining to his diet claim. The front page of one of Kramer's submissions, the "offender complaint," does not explicitly mention his religious-diet claim. That page, however, notes that Kramer has attached three prison-grievance forms requesting a new religious practice, and one of those forms includes a page detailing his request for an Odinist feast. Specifically, Kramer asked for a feast on December 21st for the "High Feast of Yule" and "further requested that HAM/PORK be included in with the FEAST MEAL." Because the documents attached to Kramer's complaint do not show that Kramer failed to exhaust his religious-diet grievance, the district court should not have dismissed this claim at the screening stage for failure to exhaust. *See Walker v. Thompson*, 288 F.3d 1005, 1009–10 (7th Cir. 2002).

Accordingly, we **AFFIRM** the district court's grant of summary judgment on Kramer's constitutional claims regarding group worship and related items and the district court's dismissal of Kramer's RLUIPA claims. We **VACATE** the dismissal of Kramer' religious-diet claims and **REMAND** for further proceedings.