NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 20, 2013
Decided December 16, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-1783

| | |
|---|---|
| GARY GOODMAN,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>YRC INCORPORATED,<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:11-cv-00464-SEB-TAB<br><br>Sarah Evans Barker,<br>*Judge.* |

**O R D E R**

Gary Goodman, a 65-year old with cardiovascular disease who worked for many years supervising mechanics at a trucking company, challenges the grant of summary judgment for his former employer, YRC Incorporated, in this age and disability employment-discrimination lawsuit. He argues that the district court did not make all reasonable inferences in his favor while reviewing the mosaic of evidence that he relies on to establish that his firing was pretextual, including inconsistent testimony about the timing of the decision and discrepancies between his final performance review and

earlier reviews. The district court concluded that his evidence does not suggest that YRC fired him because of his age or heart condition. We affirm the judgment.

Goodman worked as an "Equipment Center Supervisor" in Indianapolis for 13 years before he was laid off in 2010 at the age of 62. His job involved scheduling repairs and supervising mechanics as they worked on trucks and equipment used by YRC to haul freight. While at the company, he took leave three times for cardiovascular issues: first in 2006 when he was hospitalized for atrial fibrillation, then in 2007 for a procedure to insert stents into his arteries, and finally in 2009 for a surgery to graft an artificial artery into his leg because of his hardening arteries. His direct supervisor, Ernie Grimes, knew generally of Goodman's condition because he visited him in the hospital, gave him the paperwork to apply for medical leave in 2006, informed YRC's managers of the 2006 hospitalization, and after the 2009 graft procedure allowed him to park in front of the building instead of the employee parking lot four blocks away.

Goodman's discharge occurred in the midst of massive layoffs, but because of statements made by his supervisor at the time of firing he suspected that the real reason was his age and cardiovascular disease. YRC suffered a significant loss of business during the recent recession, precipitating layoffs that reduced the company's workforce by 40% over two years. According to company emails, a YRC manager first suggested laying off one of the six Equipment Center Supervisors from the Indianapolis office in early 2010. Goodman was fired approximately two weeks later. Shortly before the layoff, he recalled Grimes saying that someone had been asking "What do you think of Gary Goodman?" to which Grimes reportedly responded that he was "one of the best supervisors I got." Grimes also said "something to the fact that had this decision been made two weeks earlier, I might not have been the one to go." From these statements, Goodman inferred that he was laid off not because of his *performance*, but rather because he had just turned 62, making him the oldest of the Indianapolis supervisors. At the time of his layoff, six supervisors worked in Indianapolis and their evaluations showed that they were good workers and tightly clustered in their performance scores. For example, on a scale of 0 to 30 (with 15 meaning that a supervisor met expectations in all categories), the difference in individual scores in 2008 ranged from 16 to 23.

Based on inconsistencies in the statements of Grimes and a YRC manager named Don Pabst, the parties dispute which of the two men made the decision to lay off Goodman. What the evidence shows is that Pabst, the vice president of maintenance and Grimes's boss, emailed other YRC managers on March 29 to inform them of two possible workforce reduction plans. One did not involve a layoff at the Indianapolis

office, but the other named Goodman as the Indianapolis employee selected for layoff. Pabst wrote in his affidavit that he listed Goodman because that name was the one given to him by Grimes. Grimes, for his part, said that he did not make a selection at that point. He held off on deciding who to fire until around April 7, when he knew for sure that YRC intended to lay off one of the Indianapolis supervisors. According to his deposition, he ranked the supervisors on a spreadsheet and selected Goodman as the worst performer of the six. The timing of his decision is unclear. The spreadsheet he used to make his decision is signed and dated April 1, but, according to computer metadata, it was not created until April 12.

In Goodman's view, these inconsistencies concerning the decision-maker and timing of the decision suggested pretext, particularly because he had been rated as meeting expectations in his 2008 and 2009 performance reviews. Two of the other supervisors, both approximately a decade younger than Goodman, had received the lowest ranking in those years, and one—who was a recent hire—was told that his work performance "needs improvement." Meanwhile, the youngest of the supervisors (ages 35 and 44 at the time of Goodman's layoff) ranked first and second in 2009.

On YRC's motion for summary judgment, the district court concluded that the evidence was insufficient to show age or disability discrimination because, the court said, none of it suggested that the explanation given by Grimes was pretextual. The court addressed the three pieces of Goodman's mosaic and concluded that he failed to make his case under the direct method. First, even if Pabst had submitted Goodman's name in the March 29 email, the court explained, there was no evidence that Pabst selected Goodman based on his age or disability, or was even aware of Goodman's age or heart condition. Second, the court determined that the mismatched dates on the April 2010 rankings sheet (April 1 on the paper copy versus April 12 for the electronic version), though unexplained by the record, did not suggest pretext because the matrix was undisputedly created before Goodman was fired. Third, because Grimes knew that YRC had considered an alternative plan with fewer layoffs, the court concluded that his statement about someone else being fired did not suggest unlawful discrimination.

On appeal Goodman challenges the district court's conclusion that the evidence was insufficient to allow a reasonable jury to infer that he was fired based on his age and disability. He argues that the court did not make reasonable inferences in his favor, and in particular he points to evidence that Pabst was the decision-maker, not Grimes, and suggests that Grimes created the spreadsheet as a post hoc rationalization for Pabst's decision, leading to the mismatched dates.

But the court did not err in determining that the evidence was insufficient to show employment discrimination based on what it correctly described as unreasonable inferences. Courts must make reasonable inferences in the nonmovant's favor, *see Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507–08 (7th Cir. 2010), but here the court properly concluded that a dispute about whether Pabst or Grimes supplied Goodman's name for the March 29 email did not suggest that he was included on the list because he was the oldest and sickest of the Indianapolis supervisors. As the district court noted, Pabst recommended a potential reduction plan that did not involve firing Goodman, so there is no evidence suggesting that he wanted to fire Goodman. Although a fact-finder may infer that an employer who lies about the reason for a firing is hiding an illegal motive, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47 (2000), this factual dispute concerns the timing of the decision. Both Pabst and Grimes agreed that it was Grimes who made the final decision in April. Turning a dispute about timing into evidence of a cover-up, as Goodman urges, would require assuming unreasonably that Grimes's testimony is false even though it is not contradicted by anything in the record.

Goodman next challenges the court's conclusion that his evidence concerning earlier evaluations did not suggest pretext. Because he had never been identified as the lowest ranking supervisor on past performance reviews, he asserts that the district court should have skeptically viewed the final April 2010 ranking, especially given that the youngest two employees ranked highest and the eldest two ranked the lowest.

But the court correctly concluded that Goodman's earlier reviews did not show that his final review was pretextual because his direct supervisor explained why he viewed the other supervisors as slightly more skilled than Goodman, particularly with computers. Past performance reviews can be relevant in showing pretext, *see Hoppe v. Lewis Univ.*, 692 F.3d 833, 843 (7th Cir. 2012), *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998), but there is nothing inherently discriminatory about an employer's choice to modify the skills expected for a position, particularly during a business reorganization, *see Cerutti v. BASF Corp.*, 349 F.3d 1055, 1065 (7th Cir. 2003); *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 765 (7th Cir. 2001). Most of the change in scores from 2008 to 2010 stemmed from the addition of a "P.C. skills" category, yet the court correctly determined that the record does not support Goodman's suggestion that this category was added merely to disadvantage older workers. As the court explained, Goodman did not dispute that his workplace had become increasingly reliant on using computers to schedule repairs, and he conceded at deposition that his computer skills were basic. Given this undisputed explanation for the change in supervisors' relative

rankings, the court reasonably rejected Goodman's speculation that the rankings were actually based on the supervisors' ages.

Goodman finally argues that the district court erred in assessing which inferences were reasonably drawn from Grimes's ambiguous reference to an event "two weeks earlier" that resulted in Goodman losing his job. Although the district court thought that the statement had to refer to YRC's consideration of two alternate reduction plans, Goodman contends that it could just as reasonably refer to Goodman's April 4 birthday, suggesting that his age played a role in the decision.

The court correctly concluded, however, that this statement did not raise an inference of age discrimination. Grimes's statement that "had this decision been made two weeks earlier, [Goodman] might not have been the one to go" did not suggest that Goodman was fired on April 14 because he had turned 62 within that two-week period. As the court explained, Goodman testified that no one had ever commented negatively about his age or medical condition at work, so no evidence linked the statement or the layoff to discriminatory motives. Goodman did not need to line up his evidence into a tidy mosaic to survive summary judgment, *see Morgan v. SVT, LCC*, 724 F.3d 990, 996–97 (7th Cir. 2013), but the court correctly determined that the three pieces he offers, taken together, do not suggest that he was a victim of age or disability discrimination, as opposed to a good worker who was nevertheless let go during mass layoffs.

AFFIRMED.